The remaining issues raised by the Bojekians on appeal are without merit. *R.* 2:11–3(e)(1)(E).

Except as modified, the partial judgment approving the settlement is affirmed.

669 A.2d 275

JOSEPH DIPASQUALE, APPELLANT, v. BOARD
OF REVIEW, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 24, 1995—Decided January 5, 1996.

Before Judges PRESSLER, KEEFE and A.A. RODRÍGUEZ.

*McInerney & Caniglia,* attorneys for appellant (*Lawrence S. Caniglia,* on the brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for respondent (*Mary C. Jacobson,* Assistant Attorney General, of counsel; *Alan C. Stephens,* Deputy Attorney General, on the brief).

The Opinion of the court was delivered by

KEEFE, J.A.D.

Petitioner Joseph R. DiPasquale appeals from a final determination of the Board of Review (Board) denying him the alternate benefit year calculation afforded by *N.J.S.A.* 43:21–19(c)(3). On appeal, petitioner contends that the Board improperly interpreted the statute in the context of the uncontroverted facts presented. We agree with petitioner and reverse the judgment under review for the reason stated herein.

Petitioner was employed as an automobile mechanic by Burns Honda on May 10, 1992 when he was injured in the course of his employment. Unable to work because of the injury, petitioner began receiving temporary disability benefits through the workers' compensation insurer. While still under treatment for the accident, but apparently able to return to work, petitioner left Burns Honda and became employed as a mechanic for Sussman Lincoln–Mercury (Sussman). While employed at Sussman, petitioner continued receiving physical therapy for the prior injury he had suffered at Burns. The therapy was apparently ineffective, and petitioner was forced to stop working in order to have surgery on his arm. He last worked for Sussman on March 7, 1993, and, thereafter, had three surgeries performed on his arm.

While out of work for the surgery and recuperation, petitioner received temporary disability benefits from the workers' compensation insurer totalling 54 and four sevenths weeks at $320.11 per week. Those benefits ended on or about March 18, 1994 when petitioner was informed by his physician that treatment would be

of no further benefit to him, and that he could return to work although permanently disabled. The workers' compensation insurer then began making partial permanent compensation payments to petitioner in the amount of $11,203.98 for the permanent disability attributable to his right arm injury. The payment was to be made over a period of 90.75 weeks in monthly installments amounting to approximately $109.04 dollars per week.

Although petitioner was cleared to return to work, his physician advised him not to lift anything in excess of fifteen pounds. Petitioner advised Sussman of the restriction when he returned to work. Sussman then informed petitioner that it could no longer use him because of his physical limitation.

Petitioner filed for unemployment benefits effective May 1, 1994. The Deputy Director of the Division found him ineligible for unemployment compensation benefits. The Appeal Tribunal affirmed the deputy's determination. Specifically, the Appeals Examiner incorrectly concluded that petitioner was not entitled to the alternate year computation provided by *N.J.S.A.* 43:21–19(c)(3) because "his period of disability [had] not yet concluded[.]"

Petitioner appealed to the Board. His attorney correctly pointed out to the Board that the phrase "period of disability" as defined in the statute "means the period from the time at which the individual becomes unable to work because of the compensable disability until the time that the individual becomes able to resume work and continue work on a permanent basis." Inasmuch as petitioner was released by his physician to resume work, albeit with some restriction because of his permanent disability, the Appeals Examiner was clearly incorrect in concluding that petitioner was ineligible because his period of disability had not yet concluded.

The Board affirmed the decision of the Appeal Tribunal in the following words:

On the basis of the record below, we agree with the decision reached. Additionally, the claimant's original worker-related injury occurred on May 10, 1992. The claimant was disabled from employer #1 [Burns] and then secured work with

employer # 2 [Sussman]. The provisions of *N.J.S.A.* 43:21–19(c)(3) do not apply in this case because the claimant's employment (with employer # 2), which immediately preceded the period of disability which commenced on March 7, 1993, was available at the conclusion of the disability and the claimant was unable to return to that job because he could no longer perform the work.

Although the Board used the word "additionally" in its decision, it would appear that the Board did not adopt the Appeals Examiner's interpretation that petitioner's "period of disability" had not yet ended. Rather, it appears that the Board concluded that petitioner's period of disability had ended when he attempted to return to work, but he was not entitled to the alternate base year calculation because the employment held by petitioner immediately preceding the period of disability was available at the conclusion of that period.

In the words of the statute, petitioner would be entitled to the alternate base year calculation provided in *N.J.S.A.* 43:21–19(c)(3) if "the employment held by [him] immediately preceding the period of disability is no longer available at the conclusion of that period and if [he] files a valid claim for unemployment benefits after the conclusion of that period." *Ibid.* The just quoted phrase, upon which the decision in this case hinges, was added to the statute by the Legislature in 1991. *L.* 1991, c. 486, § 1. The phrase has never been construed by this court. Additionally, neither petitioner nor the Board cite any administrative decisions interpreting the phrase.

We are not bound by the Board's determination of a purely legal issue. *Mayflower Securities Co. v. Bureau of Sec.*, 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973). However, we are obliged to construe the statute so as to effect its legislative purpose. *Roig v. Kelsey*, 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994). The unemployment compensation law is remedial in nature and should be liberally construed. *Teichler v. Curtiss–Wright Corp.*, 24 *N.J.* 585, 133 *A.*2d 320 (1957).

The Board acknowledges in its brief that under the Workers' Compensation Act "[i]t is conceivable that an individual, such

as DiPasquale, who suffers a permanent partial disability, may otherwise be able to return to work." That is exactly what occurred here. Although petitioner sustained a permanent disability, it was partial rather than total in quality, thereby permitting him to return to a productive life with certain restrictions. Petitioner was, thus, in all respects eligible for benefits because he was "able to work, and is available for work" within the meaning of *N.J.S.A.* 43:21–4. Indeed, he attempted to return to work at his prior employment, but was refused employment because of the weight lifting restriction imposed by his doctor.

The life of a statute is not in its words but in its meaning. Nearly a half century ago, Judge Learned Hand taught us that "[t]here is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—then to read the words literally, forgetting the object which the document as a whole is meant to secure." *Central Hanover Bank Trust Co. v. Commissioner of Internal Revenue,* 159 *F.*2d 167, 169 (2d Cir.1947), *cert. denied,* 331 *U.S.* 836, 67 *S.Ct.* 1518, 91 *L.Ed.*2d 1848 (1947). The New Jersey Supreme Court has adopted this principle. *See Schierstad v. City of Brigantine,* 29 *N.J.* 220, 230–31, 148 *A.*2d 591 (1959); *see also AMN, Inc. of New Jersey v. So. Brunswick Tp. Rent Leveling Bd.,* 93 *N.J.* 518, 524–25, 461 *A.*2d 1138 (1983).

The Assembly Labor Committee statement accompanying the amended statute, *N.J.S.A.* 43:21–19(c)(3), states in pertinent part:

> At present, the base year for determining unemployment compensation benefit eligibility is the first four of the last five full calendar quarters immediately prior to the application for the benefits. Consequently, an individual who is *unable to obtain work* after being disabled for a large part of the base year is often prevented from obtaining unemployment benefits, no matter how long the individual was employed before the disability. This *substitute would remedy that situation* by insuring that, with respect to unemployment compensation benefits, a worker *unable to find work* is not penalized for a previous disability.
>
> [ (emphasis added).].

We understand the spirit of the legislation to be that a worker, such as petitioner, who is released from a doctor's care and attempts to return to work should not be penalized simply because

he has a disability that prevents him from performing the same work that he performed before his disability.

The Board concedes that if Sussman had filled petitioner's job in his absence, the alternate base year benefit would have been available to petitioner under the literal interpretation of the statute. However, it contends the same result does not occur when the employment is denied petitioner due to a disability.

There is no principled difference between a scenario in which petitioner's employer replaces him *before* he can return to work, from one in which the employer terminates him from his position when he attempts to return because of his disability. In either instance, the work which petitioner had before his period of disability began "is no longer available" to him in the words and meaning of the statute. In ascertaining the right to unemployment compensation benefits, a court should not be concerned with the specifics of any one provision in the law, but, rather, with the internal sense of the whole act. *Myerson v. Board of Review, Division of Employment Sec., Dept. of Labor and Industry*, 43 *N.J.Super.* 196, 128 *A.*2d 15 (App.Div.1957).

Indeed, we are mindful of the fact that the Workers' Compensation Act, the Unemployment Compensation Act, and the Temporary Disability Benefits Law are inter-related statutes designed to effect an "employee welfare plan for alleviation of wage loss[.]" *Seatrain Lines, Inc. v. Medina*, 39 *N.J.* 222, 228, 188 *A.*2d 169 (1963). Had petitioner received benefits under the Temporary Disability Benefits Law, and was then declared fit to return to work after his period of temporary disability, an unsuccessful attempt to resume work would result in his qualification for unemployment compensation benefits. *Electronic Asso., Inc. v. Heisinger*, 111 *N.J.Super.* 15, 266 *A.*2d 601 (App.Div.1970), *certif. denied*, 57 *N.J.* 139, 270 *A.*2d 42 (1970). Interestingly, the 1991 amendment to *N.J.S.A.* 43:21–19(c)(2) affords claimants who receive benefits under the Temporary Disability Benefits Law the same advantage of an alternate base year calculation that a person who receives temporary disability benefits under the Workers'

Compensation statute has. Thus, the amendment to the statute for both Temporary Disability Benefits Law and Workers' Compensation Act recipients gives additional meaning to this court's decision in *Electronic Assoc. Inc., supra.* We see no reason for distinguishing the treatment of people returning to work after a compensated temporary disability period in the context of the unemployment compensation law from those who have sustained a work-related injury.

The judgment under review is reversed and the matter is remanded for the purpose of entering an appropriate award in favor of the petitioner.