707 A.2d 201

GREGORY BODNARCHUK, PLAINTIFF–APPELLANT, v. BOARD OF REVIEW, DEFENDANT–RESPONDENT, AND METRO SERVICE GROUP, INC., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1998—Decided April 1, 1998.

Before Judges DREIER,[1] KEEFE and WECKER.

*M. Scott Tashjy,* argued the cause for appellant (*Giordano, Halleran and Ciesla,* attorneys; *Mr. Tashjy,* of counsel and on the brief).

*Steven L. Lang,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Mary C.*

---

[1] Judge Dreier did not participate in oral argument but participates in the opinion with the consent of the parties.

*Jacobson*, Assistant Attorney General, of counsel; *Mr. Lang*, on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

Plaintiff, Gregory Bodnarchuk, appeals from a final determination of the Board of Review denying him unemployment compensation benefits stemming from a claim filed by him on January 21, 1996. The issue presented on appeal is whether plaintiff qualified for an alternate "base year" calculation pursuant to the provisions of *N.J.S.A.* 43:21–19(c)(3). We disagree with the Board's interpretation of the statute and remand for further proceedings.

The following facts appear undisputed in the record before us. On January 15, 1994, plaintiff was employed by Metro Service Company when he was caused to leave his employment on that date because of a back injury incurred one year earlier. He came under the care of Dr. Barolat, a Philadelphia physician approved by his employer. Dr. Barolat performed surgery on plaintiff after which plaintiff received physical therapy.

In December 1995, plaintiff attempted to return to work. He was informed by his employer that he could not return until he received a physician's certificate releasing him for work. Plaintiff immediately scheduled an appointment with Dr. Barolat for an unspecified date in December 1995 for that purpose. However, according to plaintiff, and verified by a letter from Dr. Barolat's office, his appointment was canceled due to bad weather conditions. An appointment scheduled for "early January" 1996 was also canceled for the same reason. Dr. Barolat was unable to see plaintiff until January 24, 1996, at which time he released plaintiff to return to work.

Upon presenting Dr. Barolat's certificate to his employer on the following day, plaintiff was advised that there was no position available for him. On January 25, 1996, plaintiff filed a claim for

unemployment compensation benefits. A Division Deputy denied his claim, and plaintiff appealed to the Appeals Tribunal.

On March 14, 1996, a hearing was conducted before the Appeals Tribunal. Plaintiff was represented by counsel. At issue was the interpretation of the following statute.

> With respect to a benefit year commencing on or after June 1, 1990 for an individual who immediately preceding the benefit year was subject to a disability compensable under the provisions of the workers' compensation law ..., "base year" shall mean the first four of the last five completed calendar quarters immediately preceding the individual's period of disability, if the period of disability was not longer than two years, if the employment held by the individual immediately preceding the period of disability is no longer available at the conclusion of that period and if the individual files a valid claim for unemployment benefits after the conclusion of that period. *For the purposes of this paragraph, "period of disability" means the period from the time at which the individual becomes unable to work because of the compensable disability until the time that the individual becomes able to resume work* and continue work on a permanent basis....
>
> [*N.J.S.A.* 43:21–19(c)(3) (emphasis added).]

The specific issue before the Appeals Tribunal was whether plaintiff's "period of disability" was "longer than two years." Plaintiff contended at the hearing that the statute should be "liberally construed" and contended that but for the weather conditions Dr. Barolat would have issued the back-to-work order in December 1995, well before the January 15, 1996, anniversary date. The Appeals Examiner conceded that the issue presented was a novel one.

On March 19, 1996, the Appeals Examiner issued his opinion denying plaintiff's claim. The crux of his decision is found in the following passage from the opinion.

> The claimant contends that his original doctor's appointment was scheduled for 12/95 but was rescheduled twice because of inclement weather. As a result, the claimant's claim for Unemployment Insurance Benefits was filed late after the statutory two year period. While this Tribunal can emphasize (sic)[2] with the claimant's predicament, there is no precedent decision which would allow the validation of a claim which was filed after the two year statutory limit. Therefore,

---

[2] We assume the Appeals Examiner used the word "empathized" and it was transcribed incorrectly.

the Unemployment Insurance Claim dated 1/21/96 is invalid in accordance with *N.J.S.A.* 43:21–19(c)(3) as it was filed late.

On appeal to the Board of Review, the decision of the Appeals Examiner was affirmed for the reasons stated by the examiner.[3]

We are not bound by the Board's determination of a purely legal issue. *Mayflower Sec. Co., Inc. v. Bureau of Sec.,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973). Our purpose is to construe the statute so as to effect the legislative intent, mindful that the statute is remedial in nature and should be liberally construed. *DiPasquale v. Board of Review,* 286 *N.J.Super.* 341, 345, 669 *A.*2d 275 (App. Div.1996) (citing *Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994) and *Teichler v. Curtiss–Wright Corp.,* 24 *N.J.* 585, 133 *A.*2d 320 (1957)).

The Appeals Examiner interpreted the statute to preclude a claim such as this simply because plaintiff filed his claim after the two year anniversary date of the commencement of his disability. In doing so, the Appeals Examiner did not give full meaning to the words of the statute. Although the statute contains a temporal component as a condition for qualification, the statute does not focus on the date on which the claim is filed but rather focuses on the time at which the claimant's disability ends. That is, "if the period of disability was not longer than two years," a claimant will be entitled to the alternate base year calculation so long as the other conditions of the statute are met. *N.J.S.A.* 43:21–19(c)(3). The Legislature did not say that a claimant will be disqualified if the claim is filed more than two years after the employee's temporary disability began, as the Appeals Examiner's opinion appears to suggest.

The critical question in terms of the two year period, then, is when did plaintiff's "period of disability" end? The phrase "period of disability" is defined in the statute as "the period from

---

[3] The Board's additional determination that plaintiff did not establish the base year pursuant to *N.J.S.A.* 43:21–19(c)(1) is not relevant to this proceeding. Plaintiff never contended that he qualified under that provision of the statute.

the time at which the individual becomes unable to work because of the compensable disability until the time that the individual becomes able to return to resume and continue work on a permanent basis." *Ibid.* That question, *i.e.*, when plaintiff was "able to return to ... work on a permanent basis," was never specifically decided in this case.

While the date on which Dr. Barolat signed the back-to-work slip was relevant to that issue, it cannot be determinative in the context of this record. According to plaintiff, he felt able to resume work in early December 1995 and reported to his employer for that purpose. The employer refused to accept him back to work until he produced an authorization from the treating physician. The Appeals Examiner did not appear to discredit plaintiff's representation that he felt able to resume work in December. Indeed, the Appeals Examiner observed that plaintiff scheduled an appointment with his doctor to obtain a release in December 1995, but the appointment was canceled by the doctor through no fault of the plaintiff. We assume that was why the Appeals Examiner said he "empathized" with "the claimant's predicament."

Neither the statute nor any regulation of which we have been made aware requires a doctor's certificate to prove the point in time at which a claimant's disability ended. That question is a matter of proof. The Appeals Examiner in this case could simply have accepted plaintiff's representation that he was ready to return to work in December. Or, if he wished corroboration on that point, he could have continued the hearing subject to a report from Dr. Barolat that plaintiff would have been released in December had the appointment not been canceled. In any event, we are satisfied that where, as here, a claimant attempts to return to work before the second anniversary of the commencement of his disability and schedules a medical examination for that purpose on a date prior to the anniversary date, the fact that the claimant cannot be examined by his doctor through no fault of his own before the anniversary date does not preclude him from making a claim simply because he files the claim after the two year anniver-

sary date of the commencement of his disability. Rather, the Appeals Examiner must determine from all the available facts when it was in point of time that the claimant was actually able to resume work.

We also note that the Appeals Examiner may have placed some reliance on the fact that the workers' compensation insurance company paid temporary disability benefits to plaintiff up to the point when Dr. Barolat signed the back-to-work slip. It may very well be that it is the insurance company's policy to pay temporary disability until such an event occurs, but such policy does not determine how the unemployment compensation statute should be interpreted. As plaintiff's counsel noted at the hearing before the Appeals Examiner, the compensation matter had not yet proceeded to the final hearing, and he fully expected the insurance company would ask for a credit once it learned that plaintiff believed he could return to work in December 1995. Clearly, an insurance company's decision to pay or not pay temporary disability benefits is not competent evidence, standing alone, of when a claimant's entitlement to temporary disability benefits ended.

It is not our function to decide the facts of a given case but rather to determine whether the agency's findings are supported by the record, and whether its conclusion is in accord with accepted principles of law. *See Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980). In this case we have determined that the wrong legal principle was applied to the evidence, and that the necessary fact finding has not been made with respect to the correct legal principle. Accordingly, we remand the matter to the Board for further consideration in light of the foregoing discussion.

The judgment under review is reversed. The matter is remanded for further consideration. Jurisdiction is not retained.